IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL GWYNN | : | CIVIL ACTION |
| v. | : | |
| JEFFREY A. BEARD, et al. | : | NO. 08-5061 |

### Response to Motion to Compel Discovery

Twenty years ago, Gwynn was convicted of the murder of Marsha Smith. In the pre-dawn hours of November 20, 1994, when he appeared at 4504-06 Chestnut Street, a building from which he had been forcibly removed the day before. After an argument with the building's third-floor residents, Gwynn poured gasoline in various locations and set the building on fire. Several people who lived in the building identified Gwynn. Indeed, a few days after the crime, Gwynn gave a statement to police in which he admitted that he started the fire, although he claimed it was accidental. At the motion to suppress, Gwynn testified that the statement accurately reflected what he told police, although he claimed the statement left some things out (N.T. 10/25/95, 81).

Gwynn was tried, convicted, and sentenced in 1995. The trial was followed by years of appeal and collateral review. Gwynn was represented by experienced and competent lawyers who did not sit silently by – on the contrary, these lawyers raised almost 30 claims and briefed them extensively (even seeking *certiorari* after the denial of direct appeal).[1] Gwynn's direct appeal was rejected by the Pennsylvania Supreme Court

---

[1] On direct appeal in state court, Gwynn raised the following claims:
   1. Evidence should have been suppressed as the result of an illegal detention;
   2. Ineffective assistance for failing to file motion to suppress petitioner's confession based on prior invocation of right to counsel;
   3. Ineffective assistance for failing to introduce evidence of petitioner's "good character for law-abidingness, peacefulness, and honesty;"

4. Improper admission of evidence that petitioner had five outstanding bench warrants;
5. Ineffective assistance for failing to introduce expert testimony on issue of drug impairment/diminished capacity;
6. Ineffective assistance for failure to object to prosecutor's closing argument at guilt phase;
7. Improper admission of evidence that police dog's behavior indicated presence of gasoline at scene of fire;
8. Trial court's failure to instruct the jury on elements of simple assault;
9. Trial court's failure to instruct the jury on availability of second-degree murder;
10. Ineffectiveness for failure to request cautionary instruction at penalty phase regarding evidence of petitioner's outstanding bench warrants and previous acts of vandalism;
11. Ineffectiveness for failure to inform jury that "life imprisonment" carried no possibility of parole;
12. Aggravating circumstance of "killing while in the perpetration of a felony" is unconstitutional as rendering anyone eligible for death sentence who uses a gun as part of first-degree murder;
13. Ineffective assistance for failure to introduce evidence at penalty phase in support of statutory mitigating circumstances that petitioner had "extreme mental disturbance" and "impaired capacity to conform conduct," as well as the catch-all mitigator.

*Brief for Appellant (Direct Appeal) at 3-6.*

On PCRA appeal in state court, Gwynn raised these additional claims:
1. Ineffective assistance for failing to investigate and develop evidence of voluntary intoxication/diminished capacity;
2. Ineffective assistance for failing to produce evidence promised in the defense opening statement regarding intoxication;
3. Ineffective assistance for failing to understand elements of diminished capacity defense;
4. Racially discriminatory use of peremptory challenges by prosecution;
5. Ineffective assistance for failing to challenge warrantless detention & subsequent confession, under state constitution;
6. Ineffective assistance for failing to challenge voluntariness of confession;
7. Violation of right to counsel after that right had been invoked by petitioner prior to his confession;
8. Improper prosecutor summation in guilt phase;
9. Ineffective assistance for failing to investigate and present mental health/family history evidence as mitigation during penalty phase;
10. Sentencing hearing error by the introduction of "inflammatory evidence of non-statutory aggravating circumstances;"
11. Improper prosecutor summation at penalty phase;
12. "Vague and overbroad" aggravating circumstance, that is, "grave risk of death to another," invalidated sentencing decision;

2

in 1999, *Commonwealth v. Gwynn*, 723 A.2d 143 (Pa. 1999), and the same court affirmed the denial of his petition for state collateral review in 2008, *Commonwealth v. Gwynn*, 943 A.2d 940 (Pa. 2008).

Next, in September of 2009, Gwynn moved for discovery of "the complete files of the Philadelphia Police Department and the District Attorney's Office regarding Mr. Gwynn's case" and for a different prosecution as well (as will be explained below.) In his motion, attached as Exhibit M, Gwynn ignored the long procedural history of this case, as if the years of state court litigation had never happened. Instead, Gwynn demanded the police files based on an entirely new claim that he had not raised in state court.

The facts of this claim are somewhat difficult to untangle, but the theory seems to be as follows: About a year and a half before the fire which killed Marsha Smith, a man named Glen Taylor was killed at the same abandoned house. Two men, Gary Lupton and Maurice Johnson, were prosecuted for that killing, and members of the same group of squatters who were witnesses against Lupton and Johnson in *that* case were witnesses against Gwynn in *this* case. In his discovery motion, Gwynn made several arguments about the Lupton case. First, he asserted that the witnesses in the Taylor murder referred

---

13. Ineffective assistance for failing to challenge "grave risk of death" aggravating circumstance via diminished capacity;
14. Ineffective assistance for failing to challenge penalty phase instructions on jury's consideration of aggravating and mitigating evidence;
15. Trial court improperly failed to inform jury that a life sentence carried no possibility of parole;
16. State "proportionality review" of death sentence was improper under state and federal law.

*Brief of Appellant (PCRA Appeal) at ii-iv.*

3

to Lupton as "Rick;" when *this* fire occurred, these witnesses identified the suspect as someone they called "Rick." Gwynn suggested that these two people named "Rick" were the same person, and the killer of Glen Taylor may have been the killer of Marsha Smith. *Petition* at 85-90; *Motion for Discovery* at 10-11.

There are several problems with this theory. First, Gwynn concedes that Lupton was incarcerated at the time of Marsha Smith's murder, *Petition* at 86 – that is, her murder took place *during Lupton's trial* for the murder of Glen Taylor. Therefore, Lupton *could not* have murdered Ms. Smith.[2] Further, the witnesses to Marsha Smith's murder were sure of their identification – they *knew* Gwynn, they had *fought* with him just hours before the fire, and he threatened them and said, "I will get you all." Indeed, Gwynn *confessed* to setting the fire, his counsel argued at trial that he set the fire *accidentally*, so the existence of some other arsonist named "Rick" is not promising.

Gwynn also argued that another aspect of the Lupton case raised suspicion, but if anything this argument makes even less sense. Some of the witnesses, when asked to identify Marsha Smith's killer, told police that a photo of the perpetrator (Gwynn) had been shown to them a year earlier by detectives investigating the Lupton case, as part of a photo array of suspects. Gwynn's lawyers found it incredible that these witnesses would have remembered such a thing, but that argument lacks common sense: Because these

---

[2] Gwynn also suggests that someone was trying to prevent the witnesses from testifying in Lupton's case, and set the fire for that reason. But this theory is irrelevant to any confusion about the name "Rick." Of course, if Lupton is associated with dangerous people who would kill to protect him, disclosure of his entire police file endangers these same witnesses all over again.

4

witnesses knew Gwynn personally, it is understandable that they would have recalled having been shown Gwynn's photograph.

Finally, *none* of this was raised during the direct appeal or the PCRA proceedings in this matter, even though Gwynn *knew* about the Glen Taylor murder at the time of this own trial.[3] He also *knew* that the witnesses remembered being shown Gwynn's photo as part of the Lupton investigation. Gwynn could have asked for the Lupton transcript years ago, and he was free to explore the "Rick" issue, and the photo arrays, as he wished. He could have made these very same allegations on appeal, or collateral review. He did not. With respect to discovery, if Gwynn thought the police files were important to these

---

[3] The prosecutor *repeatedly* told Gwynn, his counsel, and the trial judge, about the Lupton case as the parties litigated a pre-trial motion to suppress:

[PROSECUTOR]: Just so the record is clear, because I explained this to Mr. Mandell [defense counsel], this was actually an unusual circumstance in that [the witnesses] knew the defendant and they told the police you already have a picture of him because he had been in another photo display on another murder ... N.T. 10/25/95, 6.

\* \* \*

[PROSECUTOR]: [Gwynn] wasn't even – Mr. Mandell knows this. He wasn't the prime suspect in the – it's another photo spread. He wasn't even the prime suspect. In other words, he was a filler and the people all knew him, you already got this photo, you showed it to us on that other occasion. N.T. 10/25/95, 113.

\* \* \*

[PROSECUTOR]: Judge, I explained this to Mr. Mandell, ... These folks were witnesses in a related – a completely unrelated homicide that took place in the same location. They're homeless and they had seen something. And there was someone completely unrelated to the defendant and they looked at photo spreads. They've known the defendant for a year. When this homicide happened they're all telling the detectives who the defendant is, they said you already have the photo, they're in the other spread. ... [The other spread] is nonexistent. The detectives can come in and talk about it. N.T. 10/25/95, 117.

5

claims – or indeed to *any* of his claims – he could have asked for the files in 1995. He apparently did not do that, either.

Despite the questionable nature of petitioner's "innocence" allegations, on March 19, 2010, this Court granted petitioner's motion for discovery. In compliance with this Order, the respondents have turned over:

1. The Philadelphia Police Department files relating to the investigation into the death of Marcia Smith;

2. The Philadelphia Police Department files relating to the investigation into the death of Glenn Taylor;

3. The Philadelphia District Attorney's Office files relating to the prosecution of Gwynn for the murder of Marcia Smith; and

4. The Philadelphia District Attorney's Office files relating to the prosecution of Lupton for the murder of Glenn Taylor.

Despite providing petitioner with more than a 1,000 pages of discovery and providing access to so many files that it took *two days* for petitioner's counsel to review the materials, petitioner argues that the provided discovery is not enough. The Commonwealth has complied with this Court's order. Petitioner's additional requests are intrusive and without basis. The motion should be denied.

*Legal Standard for discovery*

The legal standards for discovery are set forth in the prior pleadings and need not be restated here. In brief, habeas Rule 6(a) authorizes discovery upon a showing of "good cause." The Commonwealth has already set forth the relevant standards before this Court, and need not restate them here. Even *without* AEDPA, and even apart from the principles governing habeas and collateral review in general, this Court has explained that federal law "does not require that the prosecution make the file available for the

6

defendant's general perusal." *United States v. Dent*, 149 F.3d 180, 191 (3d Cir. 1998). *See also Kyles v. Whitley*, 514 U.S. 419, 436-37 (1995) ("[w]e have never held that the Constitution demands an open file policy"). In other words, a *federal* criminal defendant does not have access to the authorities' entire file, in the absence of particular special circumstances. A *state* defendant, who has already received discovery and who has litigated his case for years in state court, should not be given the benefit of a file-on-demand policy. *See also Deputy v. Taylor*, 19 F.2d 1485, 1493 (3d Cir. 1994) (federal court not forum for harassment or fishing expeditions in the guise of discovery requests).

### *Work Product*

Petitioner's first objection is to the Commonwealth's decision to remove "work product" from the prosecutor's files that were provided for review. He appears to have two objections. First, he argues that there was insufficient specificity to the work product list provided. Secondly, he argues that all these materials were required to be disclosed either way. He is wrong on both points.

*This Court's order did not address work product at all.*

The Court's prior order did not address work product at all. In footnote 1 of the order, the Court addressed Rule 6(a), which is the "good cause" standard used for general discovery requests. It is not the standard used for requests for disclosure of work product. Since the Court's prior order did not address work product at all, it is clear that this point has not yet been addressed.

The work-product doctrine protects from disclosure materials prepared or collected by an attorney "in the course of preparation for possible litigation." *Hickman v. Taylor*, 329 U.S. 495, 505 (1947). The doctrine "applie[s] . . . to the files of the prosecution." *United States v. Nobles*, 422 U.S. 225, 238 n.12 (1975). Moreover, the doctrine encompasses "a Government lawyer's recordation of mental impressions, personal beliefs, trial strategy, [and] legal conclusions." <u>Goldberg v. United States</u>, 425 U.S. 94, 106 (1976).

The United States Supreme Court has emphasized "[t]he strong public policy underlying the work-product doctrine." *Upjohn Co. v. United States*, 449 U.S. 383, 398 (1981) (quotation marks omitted). Specifically, the Supreme Court has observed:

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways – aptly though roughly termed by the Circuit Court of Appeals in this case . . . as the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Hickman*, 329 U.S. at 510-511.

Where the petitioner's discovery request is for work product, the "good cause" standard used for general discovery requests no longer applies. *Hickman*, 329 U.S. at 510. Instead, "[t]he party requesting such material bears the burden of showing that he 'has substantial need of the materials' and 'is unable without undue hardship to obtain the substantial equivalent of the materials by other means.'" *In re Horn*, 185 Fed.Appx. 199, 204 (3d Cir. 2006) (per curiam) (quoting F.R.C.P. 26(b)(3)(ii)). *See also In re International Systems and Controls Corp. Securities Litigation*, 693 F.2d 1235, 1240 (5th Cir. 1982) ("In adopting [F.R.C.P. 26], a good cause standard was rejected in favor of the

substantial need/undue hardship test"). The substantial need/undue hardship test is a more demanding standard for disclosure than good cause. *See* Nancy C. Crisman & Arthur F. Matthews, Limited Waiver of Attorney-Client Privilege and Work-Product Doctrine in Internal Corporate Investigations: An Emerging Corporate Self-Evaluative Privilege, 21 Am. Crim. L. Rev. 123, 170 (1983) ("the 'undue hardship' and 'substantial need' the plaintiffs were required to demonstrate under Rule 26(b)(3) to obtain ordinary 'fact' work product demanded a greater showing than the 'good cause' showing the district court had accepted"). Petitioner has not even attempted to make such a showing. Nor could he.

As petitioner admits in his motion to this Court, the Commonwealth has already provided him with any notes relating to jury selection. These are the only notes that could even conceivably relate to a claim or any allegation presented by petitioner. The Commonwealth believes that disclosure of those documents was entirely improper. However, a broad reading of this Court's order, required their disclosure. Thus, in an effort to keep this matter moving, the undersigned chose not to pursue further litigation relating to those documents at this time.[4]

The Commonwealth can conceive of *no proper basis* to request the disclosure of notes that are "recordation of mental impressions, personal beliefs, trial strategy, [and] legal conclusions" of the trial prosecutor. But, either way, petitioner must show a

---

[4] The Commonwealth reserves the right to challenge this broad discovery during any appeal that will follow these proceedings. Indeed, the Commonwealth intends to seek review of the entirety of this Court's discovery order at that time.

10

"substantial need" for these notes. He has never attempted to even suggest such a need. Until he does, disclosure is entirely improper.

*The Order did not require disclosure of appellate materials*

Furthermore, most of the materials that fall into this work product category relate to appellate preparation. Such documents were never requested, do not seem to be within the language of the order, and have nothing at all to do with Gwynn's stated reason for requiring access to the Philadelphia District Attorney's Office files.

As is discussed above, petitioner requested access to the prosecutor's files to support his claims, with a focus on his new claim that Gary Lupton was the "real" killer. In answer to that request, this Court's discovery order required the disclosure of all documents relating to "prosecution of Daniel Gwynn for the murder of Marcia Smith" and "prosecution of Gary Lupton and Maurice Johnson for the murder of Glenn Taylor." Most of the information set forth above, does not relate to the *prosecution* of anyone at all, but rather are documents created by appellate attorneys during appeals. Not only are these documents not covered by this Court's original order petitioner has not and cannot override work product protections.

For example, petitioner asks for more information about "Appellate briefs drafts and copies." This is absurd. On what basis, and for what purpose, would petitioner be entitled to the first draft of a brief, which is marked-up by an editor, and later revised? Similarly, "Personal notes of an appeals ADA" are exactly what is described – *notes* made in preparation to *draft a brief.* An example might be when an appellate attorney reads notes of testimony, he or she will write notes that record shorthand versions of

11

testimony and the page numbers that testimony is found on. Again, on what basis and for what purpose would petitioner be entitled to this information?

The remaining work product categories are no more compelling. Respondents did not turn over "copies of documents filed in prior stages of the case." To be clear, these are documents that were *already turned over* within the more than a thousand pages of discovery provided. They are duplicates, *and only duplicates,* that were mixed in with prior drafts of appellate briefs. Petitioner *already has these documents* he is not entitled to a second copy of them at the government's expense.

The only category of work product that even falls in the category of materials relating to a prosecution are the trial ADA's notes. Petitioner, again, has not even attempted to demonstrate that he is entitled to these documents. Respondents have examined petitioner's claims. The handwritten notes from the trial prosecutor do not in any way relate to petitioner's stated claims, or his new "innocence" allegations. It is *petitioner's* burden to show that he has "a substantial need of the materials." He has not shown *any need*, much less a substantial one.

### *Redaction of the homicide files*

Petitioner also objects to the use of redaction to protect certain, very narrowly tailored personal information that was contained in the police homicide files. In making this objection, petitioner fails to explain with any particularity what information was redacted, despite the fact that the Commonwealth has provided a detailed explanation of the redactions used and the reasons for the redactions. As the Court will see from the explanation below, the redactions are necessary to protect personal information and petitioner has not attempted to demonstrate any actual need for the information.

*Information redacted from the medical examiner's report regarding the victim's family*

In both cases, the medical examiner's report contained the contact information for the person who identified the victims' remains. This information has been blacked out on the discovery. (An example is provided as Exhibit A). Respondents cannot identify any reason at all for the disclosure of that information.

Two people were murdered more than twenty years ago. Their families deserve privacy and protection. Without a demonstration of *actual need* for this information, the present request is either a fishing expedition or a plan to harass a family that has suffered enough already. Neither is appropriate.

These are not abstract propositions. The victim's rights act affirmatively protects the families of murder victims. Specifically, the families of these murder victims have "[t]he right to be treated with fairness and with respect for the victim's dignity *and privacy*." 18 U.S.C. § 3771(a)(8)(emphasis added). The Commonwealth has an affirmative obligation under these rules to ensure the protection of the victim's family. The redaction here was chosen to comply with these obligations.

Petitioner has never presented the Commonwealth with any explanation as to why this information is necessary. He is obligated to at least present some argument on this point. His failure to do so is not merely problematic, but dispositive.

*Social Security numbers and voter ID numbers*

Several documents contained in the discovery contained social security numbers and voter identification numbers. These numbers were redacted for the protection of these individuals. Respondents can conceive of no basis for the disclosure of that information.

13

*Redaction of contact information from a man who was **not** the building manager*

At the scene of the fire, an individual named Rashied Butt was present. The first responders initially believed he was the building owner and they took down his contact information. However, the later police reports, drafted after the hectic initial scene, indicated that a different individual was the owner of the building and noted specifically that Mr. Butt was not the owner. As a result, Mr. Butt's contact information was redacted from the discovery. On the other hand, the name of the building owner *was provided* in the discovery.

*Redaction of "contact" names of individuals unconnected to the case*

On the standard form for police statements there is a space for the detective to record the "name of a close relative" for the statement giver, their address, and telephone number. (An example is provided as Exhibit B.) These individuals are not connected to the crime. They did not consent to providing their contact information. Indeed, most do not even know their contact information was provided to police. Respondents redacted this information in accordance with the policy of the Philadelphia District Attorney Office relating to discovery provided pre-trial and during any collateral appeals.

This information is not relevant to petitioner's investigation. There is no reason to believe these individuals have any information relating to this case. Petitioner attempts to get around this by arguing that it relates to "difficult-to-locate homeless witnesses." This vague, conclusory allegation is insufficient.

These witnesses were homeless *twenty years ago*. But petitioner is not looking for these individuals in the present. It seems exceedingly unlikely that they remain

homeless (as that is simply not a lifestyle that tends to endure for decades). Petitioner's vague assertion reveals that he has made *no effort at all* to use the information that he already has to locate these witnesses. If petitioner were to demonstrate a good faith effort to locate these individuals but was unable to find them, he would need to only ask the Commonwealth for further information. That request would be given fair consideration. But that is not what has happened here.

This is a pattern with petitioner. He submits brief pleadings to this Court without and particularized factual assertions and with little, if any, legal support. But it is *petitioner's* burden to demonstrate the need for discovery. It is not the Commonwealth's burden to imagine bases for his position and then provide the Court with detailed legal theories based on these possible positions.

*Other redactions*

There were other redactions made in the more than a thousand pages of discovery provided to petitioner. It is *petitioner's* burden to demonstrate *good cause* for the disclosure of information. It is, therefore, incumbent on petitioner to explain what information he is requesting and why he believes his is entitled to that specific information. Respondents have addressed the recurring issues in the redaction to provide the Court with a point of reference and an explanation for the approach used.

Petitioner seems to suggest that this is an attempt by the Commonwealth to challenge this Court's prior discovery order. Though respondents continue to believe that this Court's order was overbroad and erroneous, the Commonwealth understands that it is currently the law of the case, and the undersigned has been attempting to comply with that order.

*Requirement of "complete" files*

Seemingly aware that he has presented no argument to support his claim that he is entitled to any of the discovery he is requesting, petitioner attempts to mislead the Court by arguing that the Commonwealth has previously "admitted" that this Court's prior order included disclosure of work product or disclosure of unredacted files. He argues that the Commonwealth previously objected to the disclosure of "complete files." But those are not the Commonwealth's words. Those were petitioner's words.

Petitioner moved for discovery of "the complete files of the Philadelphia Police Department and the District Attorney's Office regarding Mr. Gwynn's case" in his September 2009 motion. The Court could have used that language in its order. But it did not. The order requires the disclosure of "Police Department files" and the "District Attorney's Office files." The word "complete" is entirely omitted.

But either way, this is a ridiculous argument. Petitioner's prior reference to the "complete" file was never a reference to work product or to non-redacted discovery. The point was that petitioner did not want selected discovery (i.e., the more common approach of requesting documents that related to a specific point), rather he wanted the whole police file. The arguments about redaction and work product were not litigated previously. They are entirely new. Frankly, by definition, these arguments would have to be new. When petitioner made his initial request, he had no idea what was in the police file or the prosecutor's file. There was no way of knowing if there would be work product in the file. Without that information, he could not have argued specific entitlement to the work product. Similarly, petitioner could not have known the specific contents of the papers in the files. So, even if he had known the policies of this office as

they related to redaction, it would have been difficult to anticipate the approach that would be taken.

In sum, the Commonwealth's actions are not contrary to the Court's prior order. The Commonwealth's decisions as to work product and redaction have not been before the Court until now. As is discussed above, petitioner has not met the "substantial need"/"undue hardship" standard required to obtain access to work product. He further cannot demonstrate "good cause" for the removal of redactions that are in place to protect the safety and privacy rights of individuals who are not directly related to this case. Petitioner's motion should be denied.

WHEREFORE, respondents respectfully request that this Court deny the Motion to Compel.

                                        Respectfully submitted,

                                        *Susan E. Affronti*

                                        SUSAN E. AFFRONTI
                                        Chief, Federal Litigation

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL GWYNN | : | CIVIL ACTION |
| v. | : | |
| JEFFREY A. BEARD, et al. | : | NO. 08-5061 |

**ORDER**

**AND NOW**, this _____ day of _____, 2016, it is hereby ORDERED that petitioner's Motion to Compel is DENIED.

BY THE COURT:

_____
Petrese B. Tucker, C.J.

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL GWYNN | : | CIVIL ACTION |
| v. | : | |
| JEFFREY A. BEARD, et al. | : | NO. 08-5061 |

## CERTIFICATE OF SERVICE

I, SUSAN E. AFFRONTI, hereby certify that on June 24, 2016, petitioner's counsel will be served with a copy of the foregoing pleading via the court's electronic filing system.

                                                  /s/ Susan E. Affronti
SUSAN E. AFFRONTI
Chief, Federal Litigation
Philadelphia District Attorney's Office
Three South Penn Square
Corner of Juniper and S. Penn. Sq.
Philadelphia, PA 19107-3499
(215) 686-5703