IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| **Daniel Gwynn**, | : | |
| Petitioner, | : | Civil Number:  08-5061 |
| | : | |
| v. | : | |
| | : | THIS IS A CAPITAL CASE |
| **Jeffrey A. Beard**, et al., | : | |
| | : | |
| Respondents. | : | |

_____

**ORDER**

On this _____ day of _____, upon consideration of Petitioner's motion to compel discovery, it is hereby ORDERED that the motion is GRANTED. The Court orders Respondents to provide the discovery this Court previously ordered, without redaction.

It is so ORDERED.

BY THE COURT:


_____
PETRESE B. TUCKER, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
**Daniel Gwynn**,                                    )
              Petitioner,             )         Civil Number:  08-5061
                                            )
    v.                                                      )
                                            )         *This is a capital case*
**Jeffrey A. Beard**, et al.,                       )
                                            )
              Respondents.         )
_____)

## MOTION TO COMPEL DISCOVERY

Petitioner Daniel Gwynn respectfully asks the Court to order the Commonwealth to comply with the Court's discovery order, E.C.F. #28. The Commonwealth has declined to turn over certain documents designated as work product. Petitioner asks this Court to enforce its previously-entered order.

### Procedural History

1.    Gwynn was convicted of the first-degree murder of Marsha Smith and sentenced to death in 1995. After his direct appeal and state post-conviction petition were denied, he filed a habeas corpus petition, E.C.F. #5, and an amended petition, E.C.F. #29, which remain pending before the Court. His petition and amendment allege that Gwynn is innocent, and that Smith's murder arose out of a prior murder committed by Gary Lupton and Maurice Johnson in the same building and

1

witnessed by the same homeless people who were squatting in the building. Lupton and Johnson beat Glenn Taylor to death and threatened to have the squatter witnesses killed if they cooperated with police. Just days before the fire that killed Smith, the squatters testified against Lupton. Immediately after the fire, the squatters told police that the person responsible for the fire was Rick, which is the name the squatters called Lupton. Shortly after the fire that killed Smith, a similar arson targeted the building where other witness against Lupton were living. The jury that convicted Gwynn knew none of this.

2. Gwynn filed a motion for discovery, requesting the "complete" police and prosecution files from his and Lupton's cases. E.C.F. #16 at 9, 13.

3. The Commonwealth responded to Gwynn's discovery motion, arguing that the motion was overbroad and premature, and urged the Court to deny it. E.C.F. #23.

4. The Court granted the discovery motion, ordering the Commonwealth to turn over the police and prosecution files from the Smith and Taylor murder cases in their entirety. E.C.F. #28.

5. In response to the Court's order, the Commonwealth filed a petition for writ of mandamus in the Third Circuit. Petition, *In re: Beard* (3d Cir. April 15, 2010). The Commonwealth's petition recognized that the Court's order "gave Gwynn the discovery he asked for." *Id.* at 21. It argued that the Court's order was

"unjustifiable," "unlawful," and "particularly egregious" in part because it was "so broad." *Id.* at 4, 6. The petition repeatedly noted that the order required it to produce complete files. *Id.* at 1 ("[T]he same district court judge has ordered the Commonwealth to produce entire police investigatory files . . . ."); *id.* at 2 ("[T]he district court actually ordered production of two complete police investigatory files"); *id.* at 3 ("Disclosure of whole police files"); *id.* at 6 ("giving defense lawyers unlimited access to police files"); *id.* at 8 ("Unfettered disclosure of entire police investigations"); *id.* at 24 ("access to the authorities' entire file"). The Third Circuit denied the Commonwealth's mandamus petition. *In re: Beard*, No. 10-9003 (3d Cir. June 3, 2010) (unpublished).

6. After these federal proceedings were stayed so that Gwynn could exhaust his new claims in state court, Gwynn's case returned to federal court and the Commonwealth undertook to comply with Court's discovery order. Discovery proceeded as follows:

7. First, before disclosing anything, counsel for the Commonwealth reviewed its file outside the presence of Gwynn's counsel and removed documents from its file; counsel for the Commonwealth later informed Gwynn that it believed the documents it removed were work product and it believed work product was excluded from the Court's discovery order. Gwynn asked the Commonwealth to

identify what it had withheld as work product, and the Commonwealth provided a brief list of the categories of documents it was withholding.

8. The Commonwealth did provide discovery of some materials that fell within a category it considered work product, namely the prosecution's notes from jury selection.[1]

9. Second, counsel for the Commonwealth permitted undersigned counsel Stiegler to review the files, not including the documents it had removed as work product, in the district attorney's office, and to designate what parts of the files Gwynn wanted. This review took place over two separate days due to the files' volume. Counsel for the Commonwealth decided, with Gwynn's counsel's assent, that the Commonwealth would retain possession of the files for scanning and the Commonwealth would provide both of Gwynn's attorneys with copies or scans of the documents they had requested.

10. The Commonwealth completed providing all the discovery it was willing to provide on April 22, 2016.

11. On May 31, 2016, Petitioner filed a Motion to Compel. E.C.F. #76.

12. The Commonwealth responded to Petitioner's Motion to Compel on June 24, 2016. E.C.F. #79.

---

[1] In the recent case of *Foster v. Chatman*, 136 S.Ct. 1737 (2016), the Supreme Court found a violation of *Batson v. Kentucky*, 476 U.S. 79 (1986), based in part on jury selection notes contained in the prosecution's file. In view of *Foster*, the Commonwealth's decision to produce jury selection notes, notwithstanding an argument that these notes constitute work product, was clearly appropriate.

4

13. On July 11, 2016, following consultation with counsel for the Commonwealth, and predicated on the Commonwealth's willingness to provide a privilege log pursuant to Rule 26 of the Federal Rules of Civil Procedure, Petitioner moved to withdraw his Motion to Compel. E.C.F. #82.

14. The Court granted this request on July 12, 2016. E.C.F. #83.

15. On July 15, 2016, the Commonwealth provided to Gwynn's counsel a privilege log. The log is attached to this Motion as Exhibit A.

## Grounds for Motion

Gwynn respectfully asks the Court to compel the Commonwealth to comply with the Court's discovery order by providing Gwynn's counsel with certain documents the Commonwealth has identified as shielded from discovery because they are alleged to constitute work product. In particular, Gwynn seeks the following:

  a) Handwritten notes pertaining to Gary "Rick" Lupton and/or Maurice Johnson, the two men prosecuted and convicted in the murder of Glenn Taylor (Privilege Log # 12, 23, 44, 46, and 57);

  b) Handwritten notes pertaining to Donald Minnick, a witness in the Taylor and Smith murder cases (Privilege Log # 14);

  c) Handwritten notes pertaining to Terry McCullough, a witness in the Taylor and Smith murder cases (Privilege Log # 15);

  d) Handwritten notes pertaining to Larry Hawkins, a witness in the Taylor and Smith murder cases (Privilege Log # 16);

  e) Handwritten notes pertaining to Anthony Daniels, a witness in the Taylor and Smith murder cases (Privilege Log # 18, 49);

f) Handwritten notes pertaining to John Witherspoon, a witness in the Taylor murders who contacted law enforcement authorities to say that Gary "Rick" Lupton offered Witherspoon money to kill witnesses against Lupton (Privilege Log # 42);

g) Handwritten notes pertaining to Lorraine Irby, a witness in the Taylor and Smith murder cases and the target of an arson fire close to the time of her testimony against Lupton and Johnson and the murder of Smith (Privilege Log # 56);

It is important to note also the alleged work product materials Petitioner is <u>not</u> seeking in this Motion to Compel. Petitioner does not seek here notes the prosecutor wrote concerning testimony in the Lupton trial (e.g., Privilege Log # 1, 11, 19, 21, 47-48, 50-51, 52-54). Petitioner does not seek materials pertaining to the internal administration of the prosecutor's office (e.g., Privilege Log # 2, 5, 43). Petitioner does not seek drafts of memoranda, correspondence, or witness lists (e.g., Privilege Log # 3, 4, 6-8). Petitioner does not seek documents concerning aspects of the Lupton trial unrelated to the Smith case (e.g., Privilege Log # 9-10, 13, 17, 20, 22, 24-41, 45, 58).

Rather, Gwynn seeks here a narrow category of documents. With two exceptions, all of the documents requested here pertain to key witnesses against Gwynn at trial. Items (a) and (f) concern the individuals Gwynn believes are responsible for Smith's murder. There is little question that information about these people is relevant to Gwynn's claims for habeas relief.

In addition, with regard to the "Subject Matter" of nearly all of the items Gwynn is requesting, the Privilege Log contains the following notation: "(cannot

determine if it is a pre-trial summary of anticipated testimony, notes taken during the trial, or preparation for an opening or closing)."[2] Were it clear to the Commonwealth, and thus to Gwynn's attorneys that these handwritten notes were made contemporaneously with the witnesses' testimony, or in preparation for jury argument, Gwynn would not be asking for them now. However, to the extent these handwritten notes may be a "summary of anticipated testimony," Gwynn is entitled to review them. This is because current counsel — for Gwynn as well as for the Commonwealth — cannot know whether these notes were based strictly on prior statements the witnesses gave and that have already been provided to Gwynn.

It is reasonable to think that, shortly before trial, during jury selection, or during a break in the evidence, a police officer or other prosecution assistant obtained additional information from or about a witness that was relevant to that witness's anticipated testimony. Under those circumstances, it is reasonable to think that someone on the prosecution team might have made a note about that information. Because of the ambiguity surrounding the source and timing of these notes, Gwynn seeks to review them.

For these reasons, Gwynn respectfully asks the Court to compel the Commonwealth to comply with its prior discovery order by providing discovery of

---

[2] This notation appears in connection with Privilege Log # 14-16, 18, 42, 44, 49, and 56-57. In addition, with regard to Privilege Log # 16, 18, and 42, there is an additional note indicating "appears to have been taken at different times." Similarly, with regard to Privilege Log #23, the notes "appear to have been drafted in advance, possibly in preparation for the cross of Lupton, but that is difficult to determine." (Emphasis added.)

the documents identified in the Privilege Log as # 12, 14-16, 18, 23, 42, 44, 46, 49, 56-57.

        Respectfully submitted,

        /s/ *Matthew Stiegler*
        Matthew Stiegler
        P.O. Box 18861
        Philadelphia, PA 19119
        (267) 297-7117
        Matthew@StieglerLaw.com

        /s/ *Gretchen M. Engel*
        Gretchen M. Engel
        N.C. Bar # 19558
        Center for Death Penalty Litigation
        123 W. Main Street, Suite 700
        (919) 956-9545
        Gretchen@cdpl.org

        *Counsel for Daniel Gwynn*

September 26, 2016

## CERTIFICATE OF SERVICE

I certify that today I served this motion on opposing counsel, Chief of Federal Litigation Susan Affronti, electronically through this Court's docketing system.

/s/ *Gretchen M. Engel*
Gretchen M. Engel
N.C. Bar # 19558
Center for Death Penalty Litigation
123 W. Main Street, Suite 700
(919) 956-9545
Gretchen@cdpl.org

September 26, 2016